UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Richard Alan Schmiel and Lynn Marie Schmiel,                  Case No. 03-66533
                                                             Chapter 7
                              Debtors.                        Hon. Phillip J. Shefferly
_____/
Stuart A. Gold, Trustee,

                   Plaintiff,

vs.                                                          Adv. Proc. No. 04-4023

Interstate Financial Corporation,

                   Defendant.
_____/

**OPINION REGARDING WHEN A MORTGAGE IS RECORDED
UNDER MICHIGAN LAW IN ABSENCE OF THE
MAINTENANCE OF AN "ENTRY BOOK"**

1. Introduction

        This opinion addresses a legal issue that has arisen in this adversary proceeding and in

numerous other adversary proceedings in the Bankruptcy Court.  The issue is when a county register

of deeds does not maintain an "entry book" as required by Michigan law, when, if ever, is a mortgage

deemed "recorded"?  For the reasons that follow, the Court concludes that even absent the

maintenance of an entry book by a county register of deeds, under Michigan law a mortgage is

recorded at the time that it is received by the county register of deeds for recording, provided that

it is in recordable form when received and the statutory recording fee was paid when the mortgage

was left for record.  If those conditions are met, recording occurs upon receipt by the register of

deeds even if there is no entry book and even if there is a delay in the review by the county register

of deeds to determine whether the mortgage is in recordable form.

## 2. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## 3. Facts

The following facts are not in dispute in this case. Richard and Lynn Schmiel are the Debtors in this Chapter 7 case. Prior to the commencement of this case, they owned a residence located at 1073 Truwood, Rochester Hills, Michigan. On April 25, 2003, they refinanced the mortgage on their residence by obtaining a mortgage loan from Interstate Financial Corp. ("Interstate"). Proceeds from the refinancing paid off the existing mortgage on the residence held by Wells Fargo Home Mortgage, Inc. ("Wells Fargo"). (Def.'s Br., Exs. D, G (docket # 25).) The Debtors granted the new mortgage to Interstate to secure the payment of $151,945. (Def.'s Br., Ex. C. (docket # 25).) Wilson Title Company handled the mortgage closing for Interstate. On April 30, 2003, Craig Helmer, an employee of Wilson Title, delivered the mortgage to the Oakland County Register of Deeds by dropping it in a "bin" at the Oakland County Register of Deeds office, along with four unrelated instruments. (Def.'s Br., Ex. E, Aff. of Craig Helmer ¶ 4 (docket # 25).) The Oakland County Register of Deeds did not make any notation on the mortgage to show the date and time that it was received by the Oakland County Register of Deeds. Check No. 3632, dated June 17, 2003, from Wilson Title to the Oakland County Register of Deeds for $169, included the fee for recording the mortgage. (Def.'s Br., Ex. D (docket # 58).) The Oakland County Register of Deeds deposited check No. 3632 on July 30, 2003. (Def.'s Br., Ex. F (docket # 25); Pl.'s Br., Ex. D (docket # 54).) The Oakland County Register of Deeds stamped the mortgage with a liber and page number on July

-2-

30, 2003, (Aff. of James H. VanLeuven, Jr., ¶ 3 (docket # 86); Compl. Ex. A), 96 days after the April 25, 2003 closing. The Debtors filed their Chapter 7 petition on September 26, 2003 and Stuart A. Gold was appointed as the Trustee in their Chapter 7 case.

The Trustee commenced this adversary proceeding by filing a "complaint to avoid preferential transfer." The complaint alleges that Interstate's mortgage was recorded by the Oakland County Register of Deeds on July 30, 2003, when the liber and page number were assigned, and that the recording constitutes a "transfer." (Compl. ¶ 9.) The complaint further alleges that because this transfer was made within 90 days before the Debtors' Chapter 7 petition date of September 26, 2003, the Trustee may avoid the mortgage under § 547(b) of the Bankruptcy Code because this transfer was made for the benefit of a creditor, on account of an antecedent debt, while the Debtors were insolvent, and that it enabled Interstate to receive more than it would have received in a case under Chapter 7. (Compl. ¶¶ 11 - 14.) Michigan recording law intersects federal bankruptcy law in this case because the Trustee's success depends on the date of the transfer, which in turn depends on when Interstate's mortgage was recorded under the Michigan recording statutes.

### 4. The Bankruptcy Issue

Resolution of the matter now before the Court first requires a review of the applicable provisions of the Bankruptcy Code that create the context for the issue of state law. The Trustee's complaint in this adversary proceeding is brought under § 547(b) of the Bankruptcy Code.[1] To

---

[1] On April 20, 2005, the Bankruptcy Abuse Prevention and Consumer Act of 2005 (BAPCPA) was signed into law. Most of its provisions did not become effective until October 17, 2005, although certain specific provisions not relevant to this adversary proceeding did become effective immediately. Because this bankruptcy case and this adversary proceeding were filed before October 17, 2005, the pre-BAPCPA Bankruptcy Code provisions apply. Unless otherwise indicated, all references to the Bankruptcy Code in this opinion are pre-BAPCPA.

-3-

prevail, the Trustee has the burden of proving all of the elements of a preferential transfer under § 547(b) of the Bankruptcy Code. 11 U.S.C. § 547(g); Lim v. Chase Home Finance, LLC (In re Comps), 334 B.R. 235, 238 (Bankr. E.D. Mich. 2005) (citing Waldschmidt v. Ranier (In re Fulghum Construction Corp.), 706 F.2d 171, 172 (6th Cir. 1983)). One of those elements is that the preferential transfer sought to be avoided must be "made [] on or within 90 days before the date of the filing of the petition . . . ." 11 U.S.C. § 547(b)(4)(A).

Section 101 of the Bankruptcy Code contains definitions of various terms used in the Bankruptcy Code. Section 101(54) defines a transfer as follows:

> "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption . . . .

11 U.S.C. § 101(54). Accordingly, the transfer must be of an interest in property. "A mortgage is an interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt." Black's Law Dictionary at 911 (5th ed. 1979); see also In re Van Duzer, 213 N.W.2d 167, 170 (Mich. 1973) (defining mortgage as "[a] conveyance of an interest in real estate to secure the performance of an obligation"). When the Debtors granted Interstate a mortgage on the Truwood property, they transferred an interest in that property to Interstate.

Because the Trustee must prove under § 547(b)(4)(A) that the transfer sought to be avoided was made within 90 days before the date of the bankruptcy petition, ascertaining the timing of an alleged preferential transfer is essential. The Bankruptcy Code provides guidance for determining when a transfer occurs. Pursuant to § 547(e)(2), a transfer is made

> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided

-4-

in subsection (c)(3)(B);

    (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

    (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of–

        (i)   the commencement of the case; or

        (ii) 10 days after such transfer takes effect between the transferor and the transferee.

11 U.S.C. § 547(e)(2).[2]  Under this section, the time a transfer is made turns upon perfection.

Section 547(e)(1)(A) addresses when perfection occurs with respect to real property:

[A] transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee . . . .

11 U.S.C. § 547(e)(1)(A).

      Thus, the bankruptcy law issue in this case is when was Interstate's mortgage on the Truwood property perfected under Michigan real property law?  If Interstate's mortgage was perfected before the 90-day preference period, the transfer is not subject to avoidance by the Trustee.  On the other hand, if the mortgage was perfected within that period, § 547(b)(4)(A) has been met, and the mortgage may be avoided.

### 5.  The Motions for Summary Judgment

      Interstate filed a motion for summary judgment based on its assertion that the mortgage did not constitute a transfer of property of the Debtors under what is known as the "earmarking doctrine."  The Court denied that motion on January 20, 2005 in Gold v. Interstate Financial Corp.

---

[2] Although not applicable to this case, BAPCPA amended § 547(e)(2) by changing 10 days to 30 days for adversary proceedings brought in bankruptcy cases filed after October 17, 2005.

(In re Schmiel), 319 B.R. 520 (Bankr. E.D. Mich. 2005) and concluded that the grant of the mortgage to Interstate by the Debtors was a transfer within the meaning of § 101(54) of the Bankruptcy Code. (For convenience, the Court will refer to this opinion as "Schmiel I.") Schmiel I specifically left open the merits of a second defense raised by Interstate in its answer to the complaint but which was not the basis for its first motion for summary judgment. That defense pertained to *when* the transfer to Interstate took place. More specifically, it focused on when its mortgage should be considered as recorded, and therefore perfected, under Michigan law. See Schmiel I, 319 B.R. at 525 n.3 (expressly stating that its decision was "without prejudice to Interstate's argument that the mortgage should be 'deemed recorded' upon presentation to the Register of Deeds").

Interstate then filed a second motion for summary judgment based on *when* the transfer of interest of the Debtors' property took place. The Trustee filed a cross motion for summary judgment regarding this issue. Although the Trustee must prove each of the elements in order to prevail on his complaint to avoid the mortgage under § 547(b), the parties' cross motions only addressed the timing of the transfer to Interstate under § 547(b)(4)(A). In their cross motions for summary judgment, the parties identified a critical, undisputed fact: during the time from the date of execution of the Interstate mortgage, on April 25, 2003, through the date that a liber and page number were assigned to the mortgage, on July 30, 2003, the Oakland County Register of Deeds did not maintain an "entry book" as required by Mich. Comp. Laws Ann. § 565.24. The failure to maintain an entry book is important because Mich. Comp. Laws Ann. § 565.25(1) requires that "[i]n the entry book of mortgages the register shall enter all mortgages and other deeds intended as securities . . . ." Further, the entry must note "the day, hour and minute of receipt" as well as various other information about

-6-

the document.  Id.  Mich. Comp. Laws Ann. § 565.25(4) states that "[t]he instrument shall be considered as recorded at the time so noted" in the entry book.  If there is no entry book, when, if ever, can a mortgage be considered as recorded under Michigan law?  And when did the transfer to Interstate occur in this case?

The Court issued an opinion denying the cross motions for summary judgment on July 27, 2005 (docket entry # 77).  (For convenience, the Court will refer to this opinion as "Schmiel II.")  In Schmiel II, the Court concluded that there were genuine issues of material fact regarding whether the mortgage in this case met the technical requirements for recording under Mich. Comp. Laws Ann. § 565.201, the date of tendering the recording fee, and the actions taken, if any, by the Oakland County Register of Deeds once the mortgage was dropped in the "bin" at the Oakland County Register of Deeds office.

### 6.  The Certified Question

As the parties were litigating Schmiel II, they advised the Court that there were many county registers of deeds that did not maintain an entry book as required by Mich. Comp. Laws Ann. § 565.24 and, as a consequence, in those counties there was no entry in an entry book of the date, hour and minute of receipt of a mortgage by the register of deeds.  The parties further explained to the Court that, because of the reduction in interest rates and other changes in the mortgage lending industry over the last several years, there was a proliferation of refinancings that led to dramatic increases in the volume of mortgage documents that needed to be recorded.  To deal with the increased volume, some registers of deeds that did not maintain an entry book adopted various other procedures.  These differed from county to county.  The parties further explained that in many counties, the increased volume also caused title companies and mortgage lenders to adopt their own

practices involving the delivery of bundles of mortgages to registers of deeds, which were not always reviewed upon receipt by the registers of deeds but were only subsequently reviewed by the registers of deeds to determine if they were legally sufficient. According to the parties, these facts combined to result in significant delays in many counties in assignments of liber and page numbers to documents delivered for recording, thereby placing mortgage companies in a perilous position. As a result of this phenomenon, at least in the Bankruptcy Court context, trustees and debtors were filing adversary proceedings at an increased rate under § 547 and § 544 of the Bankruptcy Code to avoid mortgages where such delays had occurred. The Debtors' case provides an example of the delay of assigning a liber and page number, which did not occur until 96 days after the mortgage was left in the "bin" at the Oakland County Register of Deeds office.

The Court conducted a review of its own docket and learned that indeed this was an issue that was arising with greater frequency in adversary proceedings before the Court. Upon conferring with the other Bankruptcy Judges in this district, it became clear that they were also seeing a substantial increase in the number of adversary proceedings where similar facts and this issue were raised. Because of the frequency in which this issue was arising and because it appeared to be purely an issue of Michigan law, the parties in this case and those in a number of other pending adversary proceedings, as well as the judges from the Bankruptcy Court in this district, became concerned about the possibility of inconsistent rulings and the effect that this might have upon real estate transactions throughout the state of Michigan. As a result, the United States Bankruptcy Court for the Eastern District of Michigan certified to the Michigan Supreme Court on April 19, 2006 the following question for resolution:

When a county register of deeds does not maintain an "entry book" as identified in

MCLA 565.24 and 565.25, when, if ever, is a mortgage deemed "recorded"? The certified question was submitted in five adversary proceedings and, with the certification, the Bankruptcy Court attached a list of 91 other pending cases that were then directly impacted by the resolution of this issue.

On October 20, 2006, the Michigan Supreme Court entered its order declining the Bankruptcy Court's request to answer the certified question. In re Certified Question from the U.S. Bankruptcy Court for the Eastern District of Michigan, 722 N.W.2d 423 (Mich. 2006).

Because the issue identified in the certified question is common to many adversary proceedings pending in the Bankruptcy Court in this district, the Bankruptcy Judges of this district determined to create a procedure to promote the efficient and expeditious resolution of this issue in the Bankruptcy Court. In furtherance, the Bankruptcy Court issued a notice of hearing in five adversary proceedings, which scheduled a consolidated hearing on December 11, 2006, conducted by all of the Bankruptcy Judges of this district to resolve the issue identified in the certified question. The Bankruptcy Court permitted arguments to be made by counsel for each of the parties in the five cases in which the question had been certified to the Michigan Supreme Court. In addition, because of the substantial public interest in the resolution of this question under Michigan real property law, the Bankruptcy Court created a procedure to permit other parties to participate in the hearing as amicus curiae. Amicus curiae briefs were filed by the Michigan Land Title Association, the Michigan Association of Registers of Deeds, the Real Property Law Section of the State Bar of Michigan, the Oakland County Register of Deeds and the Wayne County Register of Deeds. Each of the amicus curiae, except for the Real Property Law Section of the State Bar of Michigan, also appeared and argued at the hearing. At the conclusion of the hearing, Chief Bankruptcy Judge Steven Rhodes

-9-

informed the parties that the judges in attendance would take the matter under advisement and would render decisions in each of the five adversary proceedings in which the notice of hearing had been issued. This opinion resolves the legal issue in this adversary proceeding.

### 7. Applicable Standard

The question certified to the Michigan Supreme Court that is now the subject of this opinion is purely a matter of Michigan law. There is no controlling decision directly on point. The role of this Court then is to decide how the Michigan Supreme Court would resolve this issue. When a federal court needs to resolve an undecided question of state law, the federal court "must make the best prediction, even in the absence of direct state precedent, of what the [state] Supreme Court would do if it were confronted with [the] question." Combs v. International Insurance Co., 354 F.3d 568, 577 (6th Cir. 2004) (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938)) (internal quotation marks and other citations omitted). To assist in this task, the Court "'may rely upon analogous cases and relevant dicta in the decisional law of the State's highest court, opinions of the State's intermediate appellate courts to the extent that they are persuasive indicia of State Supreme Court direction, and persuasive opinions from other jurisdictions . . . .'" Baumgart v. Alam (In re Alam), ___ B.R. ___, 2006 WL 3816765 at *4 (B.A.P. 6th Cir. Dec. 29, 2006) (quoting Welsh v. United States, 844 F.2d 1239, 1245 (6th Cir. 1988)).

### 8. Positions of the Parties

In his complaint, the Trustee alleges that the Interstate mortgage was recorded on July 30, 2003, the date that it received a liber and page number. (Compl. ¶¶ 9, 11.) By the time of the December 11, 2006 hearing, the Trustee's position had considerably evolved. At the hearing, the Trustee asserted that absent an entry book, a mortgage should be deemed recorded when it has been

received by a register of deeds, if it was determined to be in recordable form, and the appropriate filing fee has been paid. In the event that a mortgagee is unable to establish that those events have occurred at an earlier date, then the date shown on the liber and page number should be considered the date of recording. Interstate asserts that its mortgage was recorded upon receipt by the register of deeds. The Michigan Land Title Association and the Real Property Law Section of the State of Bar of Michigan also assert that a mortgage is deemed recorded upon receipt by a county register of deeds. At the other extreme from those parties asserting that recording occurs upon receipt, the Michigan Association of Registers of Deeds asserts that a mortgage is only recorded when a liber and page number have been assigned to it by a county register of deeds. The Oakland County Register of Deeds asserts that a mortgage is deemed recorded when the Oakland County Register of Deeds has determined that it satisfies all of the requirements of legal sufficiency and the fee is cashiered by the Oakland County Register of Deeds. Finally, the Wayne County Register of Deeds asserts that a mortgage is deemed recorded not upon receipt but instead when the mortgage has been determined to meet all recording requirements and the recording fee has been paid. Its position is similar to that of the Oakland County Register of Deeds.

In short, in those instances as in the present case where there is no entry book maintained by a register of deeds, the parties to this adversary proceeding and the amicus curiae have asserted that a mortgage is deemed recorded as early as the moment of receipt of such mortgage by the register of deeds, or as late as the assignment of a liber and page number to that mortgage, or at various points along the spectrum in between the date of receipt and the assignment of a liber and page number. None of the parties assert that the failure of a county register of deeds to maintain an entry book compels the legal conclusion that a mortgage can never be recorded in such county.

The significance of these different points in time at which a mortgage should be deemed recorded absent the maintenance of an entry book by a county register of deeds is readily apparent because it is undisputed that in Oakland County, Wayne County and other counties, there have been substantial gaps in time from the date of receipt of a mortgage until the time that a liber and page are assigned. For example, Laura Thierbach, the chief deputy register at the Oakland County Register of Deeds, admits that "in the summer and fall of 2003, there were gap periods between the date a mortgage was received and the date it was recorded." (Def.'s Br., Ex. D ¶ 3 (docket entry # 63).) Similarly, the Wayne County Register of Deeds acknowledged at the December 11, 2006 hearing the existence of a gap in Wayne County between the time of presentment of a mortgage for recording and the time that it was actually assigned a liber and page number. According to the Wayne County Register of Deeds, that gap period has shrunk from 83 days in 2001 to 14 days presently. The parties' positions as to when a mortgage is deemed recorded in the absence of the maintenance of an entry book by a county register of deeds are important in this case because of two undisputed facts relative to the Oakland County Register of Deeds at the time of the mortgage in this adversary proceeding: the absence of an entry book and the existence of a gap period between the date of receipt of the mortgage and the date of assignment of a liber and page number.

### 9. Michigan Statutory Law

In Michigan, perfection occurs upon recording. See Mich. Comp. Laws Ann. § 565.29 (West 1988) ("Every conveyance of real estate within the state . . . which shall not be recorded . . . shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded."). Accordingly, for purposes of § 547(b) of the Bankruptcy Code, a transfer of a mortgage interest in real property

-12-

occurs upon perfection which, in Michigan, is when the mortgage is recorded. If the mortgage is recorded, and therefore perfected, within ten days of a debtor granting the mortgage, the time of the transfer relates back to the date the debtor granted the mortgage. 11 U.S.C. § 547(e)(2)(A). On the other hand, if the mortgage is not recorded, and therefore not perfected, within ten days of a debtor granting the mortgage, the time of the transfer does not relate back to the time the debtor granted the mortgage, but instead occurs either at the time of perfection, 11 U.S.C. § 547(e)(2)(B), or immediately before the filing of the bankruptcy petition if the mortgage still has not been perfected by the commencement of the case, 11 U.S.C. § 547(e)(2)(C).

Because the time a transfer is made turns upon perfection under § 547(e)(2), and perfection occurs upon recording under § 547(e)(1)(A), the pertinent questions in this adversary proceeding become how and when does recording occur in Michigan? There are several statutory provisions in Michigan that provide the answers.

Mich. Comp. Laws Ann. § 565.24 requires every register of deeds in Michigan to maintain an entry book of mortgages. It states that "[e]very register of deeds shall keep an entry book of deeds and an entry book of mortgages, each page of which shall be divided into 6 columns, with title or heads to the respective columns, in the following form . . . ." The heading for the sixth column is "Fee (Fees) Received."

Mich. Comp. Laws Ann. § 565.201 lists the requirements that an instrument must meet in order to be recorded by a register of deeds. Any instrument "shall not be received for record by the register of deeds . . . unless that instrument complies with each" requirement. Mich. Comp. Laws Ann. § 565.25(1). Mich. Comp. Laws Ann. § 565.25 specifies what a register of deeds must enter in an entry book, when an instrument complies with the statutory requirements. It provides as

-13-

follows:

> In the entry book of deeds, the register shall enter all deeds of conveyance absolute in their terms, and not intended as mortgages or securities, and all copies left as cautions. **In the entry book of mortgages the register shall enter all mortgages** and other deeds intended as securities, and all assignments of any mortgages or securities. In the entry book of levies the register shall enter all levies, attachments, liens, notices of lis pendens, sheriffs' certificates of sale, United States marshals' certificates of sale, other instruments of encumbrances, and documentation required under subsection (2), **noting in the books, the day, hour, and minute of receipt**, and other particulars, in the appropriate columns in the order in which the instruments are respectively received.

Mich. Comp. Laws Ann. § 565.25(1) (emphasis added).[3]

The effect of the register of deeds having entered a mortgage in the entry book of mortgages

is spelled out by § 565.25(4):

> The instrument **shall be considered as recorded at the time so noted** and shall be notice to all persons except the recorded landowner subject to subsection (2), of the liens, rights, and interests acquired by or involved in the proceedings. All subsequent owners or encumbrances shall take subject to the perfected liens, rights, or interests.

Mich. Comp. Laws Ann. § 565.25(4) (emphasis added).

In addition to an entry book, each register of deeds is also required by statute in Michigan to

maintain a second set of books, referred to as the record books. Mich. Comp. Laws Ann. §§ 565.26

and 565.491 create the statutory requirement for these record books and provide that any mortgage

entered in this book "shall be recorded at full length, with the certificates of acknowledgment . . . ."

---

[3] In its amicus curiae brief, the Wayne County Register of Deeds argues that this statutory provision only requires the notation of day, hour and minute of receipt for the entry book of levies, and not the entry book of deeds or the entry book of mortgages. No citations of authority were provided in support of this position. The Court rejects this position as contrary to the plain language of the statute because the statutory requirement to note the day, hour and minute of receipt unambiguously dictates that such items must be noted "in the books." Fairly read, the plural references to "books" in this context includes the entry book of deeds, the entry book of mortgages, and the entry book of levies.

-14-

Mich. Comp. Laws Ann. § 565.27 requires the register of deeds to "certify upon every instrument recorded by him, the time it was received, and a reference to the book and page where it is recorded." In contrast to Mich. Comp. Laws Ann. § 565.25(4), which addresses the effect of a register of deeds noting a mortgage in an entry book, Mich. Comp. Laws Ann. § 565.26 does not state any legal consequence that occurs as the result of either the register of deeds recording the mortgage at full length in this second set of books or assigning a liber and page number where this filed copy can be found. The recording at full length in this second set of books and the assignment of a liber and page number do not appear to have any legal significance under Mich. Comp. Laws Ann. § 565.26, but instead provide a mechanism for individuals to review mortgages that have been recorded by the register of deeds.

While Mich. Comp. Laws Ann. §§ 565.24 and 565.25 establish the procedure for a register of deeds to record a mortgage and specify a time that such mortgage is considered recorded when that procedure is followed by the register of deeds, the statute is silent as to when a mortgage shall be considered as recorded in the absence of statutory compliance by the register of deeds. However, Michigan courts have discussed when a mortgage may be considered as recorded in circumstances where a register of deeds does maintain an entry book but the particular mortgage in question is not noted in the entry book in accordance with Mich. Comp. Laws Ann. §§ 565.24 and 565.25. They have also considered cases where there was no entry book at all.

### 10.  Michigan Case Law

In <u>Brigham v. Brown</u>, 6 N.W. 97 (Mich. 1880), a mortgage was delivered to the register of deeds "with express directions to hold and not record it unless subsequently told to do so . . . ." <u>Id.</u> at 97. Later, another mortgage on the same property was recorded. In determining that the

subsequently recorded mortgage had priority, the court held that "merely leaving the mortgage in the register's hands was not, under the circumstances, leaving it for record . . . ." Id. at 98 (citation omitted). Bare delivery to a register of deeds then is insufficient by itself to constitute recording.

The effect of the entry of a mortgage into the entry book was addressed in Balen v. Mercier, 42 N.W. 666 (Mich. 1889). The court held that Michigan's "statutes contemplate that any instrument which is entitled to be recorded shall first be entered by the register in the entry book, and it is then deemed recorded." Id. at 668-69.

In Sinclair v. Slawson, 6 N.W. 207 (Mich. 1880), the register of deeds properly noted the mortgage in the entry book, but omitted the name of the mortgagee when copying the instrument in the record book. The court observed that "[u]sually, in such offices, considerable time must elapse between the entry and the actual copying of the instrument upon the record book . . . ." Id. at 209. The issue then was whether the mortgagee's interest in the property was subject to the claims of a bona fide purchaser from the property owner. The court concluded that the mortgage did not somehow cease to be recorded or become a nullity when defectively entered into the record book. Instead, the mortgage "was in the law considered as recorded, and for all the purposes of notice and protection was recorded when it was left for record and noted in the entry book." Id. This case makes clear that it is not the date of assignment of a liber and page, which only occurs when the full mortgage document is recorded at length in the second set of record books under Mich. Comp. Laws Ann. § 565.26, that constitutes recording for purposes of notice to the world.

While Sinclair v. Slawson is useful in understanding the distinction between the two sets of books required respectively by Mich. Comp. Laws Ann. §§ 565. 24 and 565.26, and makes clear that even with a considerable lapse of time between entry in the entry book and copying in the record

book that a mortgage is still considered as recorded in Michigan, it does not address the result that occurs when a register of deeds fails to comply with its statutory duty to maintain an entry book under Mich. Comp. Laws Ann. § 565.24.

Recently, Michigan courts were confronted with a case in which the Wayne County Register of Deeds failed to maintain an entry book. In <u>Central Ceiling & Partition, Inc. v. Department of Commerce</u>, 642 N.W.2d 397 (Mich. Ct. App. 2002), various subcontractors showed that they presented their lien claims against a contractor to the Wayne County Register of Deeds within the 90 day safe harbor provision of the Michigan Construction Lien Act. However, they did not receive assignments of a liber and page number until after the 90 day period had expired. 642 N.W.2d at 399. The subcontractors claimed that they had done all that the law permitted them to do and that the failure of the Wayne County Register of Deeds to assign a liber and page number until after the 90 days had expired should not result in their liens not being timely recorded. The Michigan Court of Appeals focused on a "substantial compliance" provision contained in the Construction Lien Act. <u>Id.</u> at 401. That provision is contained in Mich. Comp. Laws Ann. § 570.1302 and states that:

> "This act is declared to be a remedial statute, and shall be liberally construed to secure the beneficial result, intents, and purposes of this act. Substantial compliance with the provisions of this act shall be sufficient for the validity of the construction liens provided for in this act, and to give jurisdiction to the court to enforce them."

<u>Id.</u> at 400 (quoting Mich. Comp. Laws Ann. § 570.1302(1)). The Court of Appeals ruled in favor of the subcontractors based upon this substantial compliance provision under the Michigan Construction Lien Act, but did not address the recording statutes in Michigan including Mich. Comp. Laws Ann. § 565.24.

On the other hand, the dissent to the Michigan Court of Appeals decision focused directly

upon the applicability of the recording statutes in Michigan to the lien claims that had been delivered by the subcontractors to the Wayne County Register of Deeds within the 90 days but were not assigned a liber and page number until after the 90 days had expired. The dissent argued that reliance upon the Michigan Construction Lien Act's substantial compliance provision defeats the purpose of the recording requirement and is inconsistent with the plain meaning of the term "recorded." Central Ceiling, 642 N.W.2d at 404 (Wilder, J., dissenting). The dissent went on to review the recording statutes in Michigan and prior case law in Michigan and concluded that "the leaving of [an] instrument for record [with the register of deeds], i.e., filing, *does not* constitute the recording of the document." Id. (citations omitted). The dissent then examined the recording statutes and argued that "recording" can only mean "entry in the books" and rejected the argument that the failure of a register of deeds to timely make such entry should lead to a different interpretation of the recording statute.

> The majority also concludes that attributing delays in recording by the register of deeds to lien claimants would lead to absurd and unfair results not contemplated by the Legislature. I agree that the Legislature likely did not contemplate that the register of deeds would fail to timely perform the duties imposed on the register by statute. . . . I cannot accept the majority's conclusion that the rules of statutory construction permit the tacit understanding that the term "recorded" in the act really means filed.
>
> . . . In any case, the difficulties attendant in determining whether the register is timely performing the duties of the office are not justification for this Court to redefine the commonplace and unambiguous statutory term "recorded."

Id. at 405-06 (citations omitted).

Although the dissent rejected the majority's application of the substantial compliance provision of the Michigan Construction Lien Act, and instead focused on the word "recorded" under the recording statutes, the dissent did not attempt to address whether a lien could be recorded prior to being assigned a liber and page number by the register of deeds, notwithstanding the failure of the

-18-

register of deeds either to maintain an entry book or to timely make entries in it if maintained.

The Department of Commerce appealed the Central Ceiling decision to the Michigan Supreme

Court. While the holding is clear, the rationale on which it is based is not. In a very brief opinion,

the Michigan Supreme Court stated as follows:

> We AFFIRM the judgment of the Court of Appeals, albeit for different reasons. On
> the limited facts of this case, we conclude that the liens presented to the Wayne
> County Register of Deeds were timely recorded.

683 N.W.2d 142, 142 (Mich. 2004). The Michigan Supreme Court did not explain its "different

reasons" but did note that it appeared that the "substantial questions about the validity of the liens

in this case may have resulted from the failure of the Wayne County Register of Deeds to perform

statutorily imposed duties regarding the recording of liens . . . ." Id.[4]

## 11. Analysis

Because the Michigan Supreme Court in Central Ceiling did not explain its reasons for holding

"that the liens presented to the Wayne County Register of Deeds were timely recorded," its

precedential value is admittedly limited. However, there are some inferences that can be fairly drawn

---

[4] Because of this fact, the Michigan Supreme Court then issued an order requiring the Wayne County Register of Deeds to file quarterly written reports "on its progress toward bringing its recording system into compliance with the requirements of [Mich. Comp. Laws Ann. §§] 565.24 and 565.25." Id. On December 28, 2005, the Michigan Supreme Court issued a follow-up opinion regarding the progress of the Wayne County Register of Deeds in bringing its recording system into compliance with Mich. Comp. Laws Ann. § 565.24 and § 565.25. Central Ceiling & Partition, Inc. v. Dep't of Commerce, 709 N.W.3d 146 (Mich. 2005). Without explanation, the court relieved the Wayne County Register of Deeds from the requirement to continue to file quarterly reports of "its progress toward bringing its recording system into compliance with the statutory requirements." Id. at 146. In a concurring opinion, Justice Young recognized that "[l]iens, mortgages, and other property interests are jeopardized by the failure of the Register's office to perform its duty in accordance with the law." Id. at 147-48 (Young, J., concurring). The concurring opinion also "urge[d] the appropriate elected officials to take account of and remedy this problem as soon as possible." Id. at 148.

-19-

from its opinion. First, and most obvious, its decision does not hinge on the substantial compliance

provision of the Michigan Construction Lien Act, upon which the Michigan Court of Appeals relied.

Second, its holding recognizes that the assignment of a liber and page number by a register of deeds

is not itself the act of recording under the Michigan recording statutes. Third, a delay in assigning

a liber and page number to a document by a register of deeds does not mean that the document

remains unrecorded during this gap period. Fourth, just because a register of deeds does not comply

with its statutory obligations to maintain an entry book under Mich. Comp. Laws Ann. § 565.24, it

does not follow that a document cannot be deemed recorded under Michigan law. Fifth, and most

important, to state the corollary of the prior inference, a document *can* be considered as recorded in

Michigan even when the register of deeds has failed to perform its statutory duty to make an entry

of such document in an entry book as required by Mich. Comp. Laws Ann. § 565.24.

Although <u>Central Ceiling</u> held that the liens in that case were recorded under Michigan law

despite the absence of an entry book and the notation in an entry book of the liens, it does not stand

for the proposition that the mere leaving or delivery of a mortgage with a register of deeds by itself

constitutes recording. First, the Michigan Court of Appeals opinion noted that the facts in <u>Central</u>

<u>Ceiling</u> were all stipulated to before the trial court. <u>Central Ceiling</u>, 642 N.W.2d at 399. One of the

stipulated facts was that of the six liens at issue, all were "timely filed and accepted" by the Wayne

County Register of Deeds. <u>Id.</u> at 400. There was no suggestion that the liens were not in recordable

form when filed or that the Wayne County Register of Deeds had any other reason to determine that

they should not be recorded. Second, it is well established in Michigan law that mere delivery of a

mortgage to a register of deeds is not by itself sufficient to constitute recording. <u>See</u> <u>Brigham v.</u>

<u>Brown</u>, 6 N.W. 97 (Mich. 1880); <u>see also</u> <u>Northern Concrete Pipe, Inc. v. Sinacola Companies -</u>

04-04023-pjs    Doc 98    Filed 02/27/07    Entered 02/27/07 15:06:46    Page 20 of 34

Midwest, Inc., 603 N.W.2d 257 (Mich. 1999) (finding that lien mailed to Oakland County Register of Deeds twice and twice returned because of incomplete legal description was not "accepted" by the register of deeds until the complete legal description was included).

      If mere delivery by itself is insufficient to constitute recording, but recording can occur even absent an entry book, what then are the relevant criteria under Michigan law to determine whether a document received by a register of deeds but not noted in an entry book has actually been recorded? Mich. Comp. Laws Ann. § 565.201 sets forth the specific "requirements for recording with the register of deeds." It provides that no instrument "shall be received for record by the register of deeds . . . unless that instrument complies with each of the [ ] requirements" set forth in that statute. That statute contains requirements regarding the names and addresses of parties and notaries public whose names appear on the instrument, and requirements regarding the type, margins, and print on such instrument. While the statute makes clear that a register of deeds may not "reject" an instrument for recording because of its content, Mich. Comp. Laws Ann. § 565.201(5), the statute is equally clear that a register of deeds has no duty to receive for record an instrument delivered to it unless the instrument complies with each of the specific requirements set forth in Mich. Comp. Laws Ann. § 565.201(1).

      There is a final statutory requirement that must be met in order for a register of deeds to be obligated to record an instrument left for recording. That requirement is the payment of a recording fee. "[A] register of deeds is entitled to the following fees . . . : For entering and recording a [ ] mortgage, . . . $8.00 for the first page and $3.00 for each additional and succeeding page. **The fee shall be paid when the . . . mortgage . . . is left for record.**" Mich. Comp. Laws Ann. § 600.2567(1)(a) (emphasis added). In those instances when a register of deeds maintains an entry

-21-

book, receipt of the fee is noted in the sixth column of that book.  Mich. Comp. Laws Ann. § 565.24.

What emerges from a review of the Michigan statutes is that there are three specific requirements for recording a mortgage in Michigan.

1.    The mortgage must be received by the register of deeds under Mich. Comp. Laws Ann. § 565.25(1).
2.    The mortgage must meet the technical requirements of Mich. Comp. Laws Ann. § 565.201.
3.    The recording fee must be paid when the mortgage is left for record, under Mich. Comp. Laws Ann. § 600.2567(1)(a).

If these three requirements are met, in light of <u>Central Ceiling</u>, and prior Michigan case law, the Court holds that the Michigan Supreme Court would conclude that a mortgage is deemed recorded, even absent the entry of the mortgage in an entry book by the register of deeds as required by Mich. Comp. Laws Ann. §§ 565.24 and 565.25.  While Mich. Comp. Laws Ann. § 565.25(4) provides that a mortgage "shall be considered as recorded at the time so noted" in the entry book, the failure of the register of deeds to "so note" does not necessarily mean that the mortgage is not recorded.  Instead, it means that resort must be had to other evidence to ascertain whether and when the mortgage has been recorded.  Although the assignment of a liber and page number upon recording the full length of a mortgage in the second set of books under Mich. Comp. Laws Ann. § 565.26 does not itself constitute recording, it does provide conclusive evidence that recording has occurred no later than the date of such assignment, because a necessary condition to the full length recording in this second set of books is that the instrument must be one that was "required to be entered in the entry book of mortgages."  Mich. Comp. Laws Ann. § 565.26.  In other words, if the mortgage received was not an instrument required to be entered in the entry book under Mich. Comp. Laws Ann. § 565.25 (e.g., either because of failure to comply with the technical requirements of Mich.

-22-

Comp. Laws Ann. § 565.201 or because of non-payment of the required fee under Mich. Comp. Laws Ann. § 600.2567(1)(a)), then it need not be recorded at full length in the second set of books required by Mich. Comp. Laws Ann. § 565.26. On the other hand, if the mortgage was assigned a liber and page number and set forth at full length in the second set of books under Mich. Comp. Laws Ann. § 565.26, then recording must necessarily have already occurred. By so holding, the Court rejects the position asserted in the Trustee's complaint in this adversary proceeding, and supported by some of the amicus curiae at the December 11, 2006 hearing, that recording occurs only upon the assignment of a liber and page number, or only occurs after a register of deeds has either completed its "review" or "cashiered" the transaction.

Absent the maintenance of an entry book under Mich. Comp. Laws Ann. § 565.24 and absent a notation in it under Mich. Comp. Laws Ann. § 565.25, the recording of a mortgage at full length in the second set of books with a liber and page number assigned under Mich. Comp. Laws Ann. § 565.26 demonstrates an outside date by which recording must have occurred. However, because of the admitted gap period before the assignment of a liber and page number in Oakland County, how can the parties establish *when* the actual moment of recording occurred or, to state it differently, when the mortgage was *received for record*? If the register of deeds is fulfilling its statutory duty to certify on the mortgage "the time when it was received," as required by Mich. Comp. Laws Ann. § 565.27, then evidence will be readily available to ascertain *when* the first requirement for recording (i.e., receipt by the register of deeds) has occurred. If the register of deeds also fails to perform it statutory duty to certify the time of receipt on the mortgage, then other evidence of the time of receipt may have to be adduced. However, even if the register of deeds does certify the time of receipt on the mortgage, as required by Mich. Comp. Laws Ann. § 565.27, if the register of deeds does not maintain

-23-

an entry book under Mich. Comp. Laws Ann. § 565.24 and make an entry in it under Mich. Comp. Laws Ann. § 565.25, then resort to extrinsic evidence will still be necessary to determine whether the other necessary statutory criteria for recording are met: recordable form and payment of the fee. Testimony from individuals may have to be marshaled regarding the date an instrument was delivered to a register of deeds, whether the instrument was in recordable form, and whether the fee was paid, to demonstrate the moment of recording, *if* the register of deeds either does not maintain an entry book or fails to note the date, time and receipt of the mortgage in such entry book. That may be difficult, time consuming, expensive, and fact intensive in each case. That is unfortunate, but necessary when a register of deeds fails to perform its statutory duties to maintain an entry book and make the proper entries in it.

If a mortgagee has done all that the law requires or permits it to do by presenting a mortgage in recordable form and paying the proper filing fee, no useful purpose is served by penalizing the mortgagee for the failure of a register of deeds to perform its statutory duties, over which the mortgagee has no control. See Woodruff v. Phillips, 10 Mich. 500, 505 (1862) (protecting the interest of a mortgagee from the consequences of an unauthorized and unofficial act of the register, finding that the mortgagee "had done all the law required, and all an honest man could do, to secure his property"); see also Mich. Att'y Gen. Op. No. 2065 (Nov. 1, 1955) ("[O]ne who tenders for recording, together with the required recording fee, a deed that complies with the statutory requirements for recording of deeds in this state has a clear legal right that the same be recorded."). But policy by itself would not be sufficient in this Court's view to conclude that a mortgage is recorded under Michigan law absent the maintenance of an entry book and the notation of an entry in it regarding that mortgage, if the Court were not persuaded that such result is required by the

-24-

Michigan recording statutes, is consistent with the case law that has been developed in the Michigan courts, and is the result that would be reached by the Michigan Supreme Court if confronted with the question. Although an entry in an entry book statutorily instructs that a mortgage "shall be considered as having been recorded when so noted," Mich. Comp. Laws Ann. § 565.25(4), and thereby provides conclusive and readily accessible evidence of recording, the absence of such notation does not mean that the mortgage has not been recorded, but only that other evidence will have to be marshaled to demonstrate the recording of such mortgage and ascertain the time of such recording. The Michigan Land Title Association asserts in its memorandum that "[w]hile entry books are intended to provide evidence of the receipt of an instrument and to establish the time it is deemed recorded (receipt), they do not determine whether an instrument has in fact been recorded. That may occur without an entry book." (Amicus Curiae Br. of Mich. Land Title Ass'n at 6 (docket entry # 94).) The Court agrees.

In sum, the attributes of a mortgage received for record are the same irrespective of whether a register of deeds fulfills its statutory duty to enter it in an entry book under Mich. Comp. Laws Ann. § 565.24 and § 565.25. There being three statutory requirements for recording, with or without an entry book, it follows that a mortgage is only recorded upon satisfaction of all three requirements. The important point in time is when all of the statutory requirements for recording are met, rather than the date that someone conducts a review to see if they are met. If the mortgage is in recordable form and the fee is paid when the mortgage is delivered, even if those facts must be shown by extrinsic evidence, the moment of receipt by the register of deeds of such mortgage is the moment of recording. If a mortgage delivered to a register of deeds office is later determined not to meet all the requirements of Mich. Comp. Laws Ann. § 565.201, then such mortgage was not *received for*

-25-

*record* and the mere delivery of such instrument will not constitute recording. Likewise, if a mortgage is delivered to a register of deeds and is in compliance with Mich. Comp. Laws Ann. § 565.201, but the statutory fee is not then paid, then the mortgage is not recorded at that moment because Mich. Comp. Laws Ann. § 600.2567(1)(a) has not been met.[5]

In so holding, the Court rejects the argument made by some parties at the December 11, 2006

---

[5]At the December 11, 2006 hearing, Interstate asserted that some registers of deeds, including Oakland County, refuse to accept payment of the recording fee when a mortgage is delivered for the purpose of recording. According to Interstate, those registers of deeds have announced that they will not accept payment of the fee until after they have completed their review of the document delivered, even if such review takes weeks or months to complete. Further, as a consequence of such practices, mortgagees and title companies in such counties have adjusted their own practices so that they now do not even attempt to tender the fee until the register of deeds indicates that it has completed its review and the register will now accept payment of the fee. At the hearing, the Oakland County Register of Deeds conceded that it does not "take a check from the title company" when a "batch" of mortgages is delivered for recording, but suggested that this practice is the result of some "agreement" with various title companies and not necessarily a unilateral refusal by the register to accept payment until some later time. It is beyond the scope of this opinion to determine factually whether the delay in payment of a particular recording fee is due to the refusal of a register of deeds to accept payment when tendered, or the result of a failure on the part of a mortgagee to tender payment of the fee, or the result of some agreement between a register of deeds and title company. It is also beyond the scope of this opinion to determine the burden of proof with respect to these facts since the parties did not brief this issue.

However, there are some observations that can and should be made about the sub-set of issues pertaining to payment of the fee in those cases where the register of deeds does not maintain an entry book. First, the statutory requirement to pay the recording fee unambiguously states the time for such payment to be made: "The fee shall be paid when the . . . mortgage . . . is left for record." Mich. Comp. Laws Ann. § 600.2567(1)(a). Second, no party has cited to any authority that would permit a register of deeds to refuse to accept payment of a recording fee that accompanies delivery of a mortgage in recordable form. Third, the failure or refusal of a register of deeds to accept payment of a recording fee when a mortgage in recordable form is delivered, whether accomplished by refusing to accept a check, returning a check, or delaying negotiation of a check, should not result in a mortgage left for record not being deemed recorded any more than the failure of a register of deeds to maintain an entry book should cause such result. In both instances, if the mortgagee has done all that it is required or permitted by the law to do, it should not be penalized by the failure of the register of deeds to perform its statutory duties, over which the mortgagee has no control.

-26-

hearing that, when the three requirements are not met simultaneously, the moment of recording somehow "relates back" to the time that the first requirement was met. For example, if a mortgage is received by a register of deeds and is in recordable form but with no fee paid, the subsequent payment of the fee some months later does not mean that the date of recording relates back to the moment that the mortgage was first received by the register of deeds. Similarly, delivery of a mortgage that is not in recordable form, even though accompanied by payment of the fee, is not received for record until the technical requirements for recording are met. If that should not occur until months later, the moment of recording does not relate back to the date of delivery of the non-compliant mortgage. No party has provided any authority to support the proposition that when the three requirements for recording are met at different times, the time that the last requirement is met permits the moment of recording to relate back to the time that the first requirement was met. Nor is the Court persuaded that the Michigan Supreme Court would so hold if confronted with the question. Rather, recording is deemed to occur at the first moment that all three requirements have been met.

### 12. Other Support

Although there have been no further reported decisions from Michigan courts regarding the issue before this Court, support for the Court's analysis in this opinion can be found in other opinions that have persuasive value.

Tibble v. Consumers Credit Union (In re Koshar), 334 B.R. 889 (Bankr. W.D. Mich. 2005), like the case at bar, involved a preference action brought by a bankruptcy trustee against a mortgagee. In that case, the debtor and his spouse executed a mortgage in favor of a credit union. Id. at 891. Uncontroverted deposition testimony established that the mortgage was mailed to the Kalamazoo

County Register of Deeds for recording on the same day that it was granted. <u>Id.</u> at 891-92. It was then mailed back to the mortgagee by the register of deeds because of a question pertaining to the authenticity of the debtor's signature. <u>Id.</u> at 892. The evidence showed that it was then returned to the Kalamazoo County Register of Deeds sometime between February 16 and February 20, 2004. A liber and page number were assigned with the date March 8, 2004. The trustee maintained that the credit union's mortgage was not recorded within the meaning of Mich. Comp. Laws Ann. § 565.29 until the register of deeds actually assigned a liber and page number and filed the entire mortgage full length in the second set of books referred to as the record books under Mich. Comp. Laws Ann. § 565.26. According to the trustee, the recording date then was March 8, 2004, which rendered the mortgage vulnerable as a preference. The court rejected that argument. Citing Mich. Comp. Laws Ann. § 565.25(4), the court explained that:

> There is absolutely no question that the time referenced in this subsection is the time of the instrument's receipt, for the register of deeds is required by statute to enter into the entry books the date of receipt with respect to each instrument accepted for entry. Mich. Comp. Laws § 565.24. There is no similar requirement with respect to the record books. Consequently, the reference to the "the time so noted" in Mich. Comp. Laws § 565.25(4) can only mean the entry book.

<u>In re Koshar</u>, 334 B.R. at 895.

The trustee then argued that Mich. Comp. Laws Ann. § 565.25(4) was irrelevant in that case "because the Kalamazoo County register of deeds office does not maintain entry books as required by the statute." <u>Id.</u> The <u>Koshar</u> court reviewed an affidavit that demonstrated that the Kalamazoo County Register of Deeds "does not keep records of the date of receipt of documents delivered to our office for recording." <u>Id.</u> The court also noted that "the Chapter 7 Trustee maintains that very few register of deeds offices in Michigan comply with Mich. Comp. Laws § 565.25." <u>Id.</u> The court

-28-

then reviewed the parties' arguments regarding the significance and precedential value of <u>Central Ceiling</u>. <u>Id.</u> at 896. Although the court accorded little precedential value to <u>Central Ceiling</u> because of the opinion's express caveat that it was based upon "the limited facts of this case" and because the opinion did not contain an explanation of the conclusion that it reached, the <u>Koshar</u> court ultimately concluded that the credit union need not rely upon <u>Central Ceiling</u> because "its position is well supported by Michigan's recording statutes themselves." <u>Id.</u> Explaining that Michigan's recording statute is a race-notice statute and that the bankruptcy trustee's arguments overlook the "race" aspect of those statutes, the court observed that the race between the credit union and any subsequent purchaser ended once the Kalamazoo County Register of Deeds office accepted the credit union's mortgage on February 29, 2004 even though it maintained no entry book in which to note the time and date of receipt. <u>Id.</u> at 896-97.

> The failure of the register of deeds office to maintain entry books does not mean, as the Chapter 7 Trustee contends, that the race can no longer be measured or that the race is otherwise to be delayed to some date well after the instrument was actually accepted for recording. Rather, it means only that reference must be made elsewhere to ascertain the pertinent time and date of receipt. Indeed, had the Kalamazoo County register of deeds been performing one of its other duties, that being the notation of the time of receipt on the instrument itself, Mich. Comp. Laws § 527.27, no further inquiry would have been necessary. Unfortunately, this duty was neglected as well.

<u>Id.</u> at 897.

Although not viewing the <u>Central Ceiling</u> opinion as binding precedent, for the reasons explained, the <u>Koshar</u> court did make a persuasive observation about the sentiment embodied in <u>Central Ceiling's</u> holding:

> The inherent unfairness to innocent purchasers of Michigan's race-notice recording statute is unquestionably exacerbated when books of entry are not maintained. However, I am satisfied that the Michigan Supreme Court would not take the

extraordinary step of eliminating the "race" requirement from Mich. Comp. Laws
§ 569.29 so as to protect an innocent purchaser under such circumstances. It is
important to remember that [the credit union] is also an innocent participant in this
play. **While *Central Ceiling* may not be on point, it does express the Michigan
Supreme Court's sentiment that persons like [the credit union] who have relied
upon the law to protect themselves should not then be punished because the
government itself has failed to follow the very same law.**

Id. at 899 (emphasis added).

The Koshar court ultimately concluded that there was a genuine issue of material fact in that

case as to when the Kalamazoo County Register of Deeds office accepted the credit union's mortgage

for recording. Id. However, it clearly rejected the notion that the failure of a county register of deeds

to maintain an entry book and make the statutorily required notations in it under Mich. Comp. Laws

Ann. § 565.25(1) and (4) somehow compels the legal conclusion that a mortgage delivered to the

register of deeds cannot be deemed recorded if it otherwise meets all of the requirements for

recording under Michigan law.

Further support for the Court's analysis can be found in National Lumber Co. v. Lombardi,

834 N.E.2d 267 (Mass. App. Ct. 2005), *app. denied*, 836 N.E.2d 1096 (table). That case involved

an analogous set of facts under Massachusetts law. Similar to Mich. Comp. Laws Ann. § 565.24,

Massachusetts law requires that a register of deeds keep an entry book to make entries with respect

to documents received for recording:

> Each register shall keep a book . . . [and] shall enter therein, in the order of receipt,
> all deeds and instruments left for record, . . . noting . . . the day, hour and minute
> when received . . . and every deed or instrument shall be considered as recorded at the
> time so noted[.]

Lombardi, 834 N.E.2d at 271 (quoting Mass. Gen. Laws ch. 36, § 26). Like the instant case,

Lombardi involved a register of deeds that, the court noted, had experienced "substantial increases"

-30-

in the number of documents received by it for recording, at the same time as it was experiencing "significant reduction in its personnel," thereby creating "serious delays" in making entries in its entry book. Id. at 269. The document in question in that case was a complaint to enforce a mechanic's lien which, by statute, was required to be recorded within 30 days of the commencement of the action by the lien holder. Id. at 268. Because of the delays noted by the court, the complaint, although sent by the lien holder for recording with the appropriate recording fee on a timely basis, was not noted by the register of deeds in the entry book until 14 days after the statutory deadline. The property owner filed an action to discharge the mechanic's lien based on a failure to record the complaint in a timely manner. The trial court dismissed the action and the appellate court affirmed. Although its holding is similar to that in Central Ceiling, the court also found persuasive the mechanic's lien claimant's assertion that it had done all that the law permitted it to do and that it was only because of the failure of the register of deeds to make the entry in the statutorily required entry book that created the predicament. "There can be no dispute that a party seeking to perfect a mechanic's lien is not physically capable of recording the document itself." Id. at 270.

> Here, having presented the attested copy of the complaint to the registry for filing well within the statutory thirty-day period, National did everything it reasonably could to achieve the requisite recording, was not obligated to follow up or supervise the performance by registry officials of their duty to record the instrument in a timely manner, could properly presume that those officials would perform their duties in accordance with their statutory obligations, and did not lose its lien as a result of those officials' failure or neglect of duty.

Id. at 273. While the Lombardi decision deals with Massachusetts rather than Michigan law, the policy it articulates is compelling.

### 13. Application to This Case

The Court's holding in this opinion reflects its view of how the Michigan Supreme Court

would resolve the legal issue before this Court. It does not, nor does it intend to, resolve all of the issues that may arise because of the differing practices among registers of deeds, title companies and mortgagees, or because of differing facts regarding particular transactions. The balance of this opinion addresses how the Court's holding on the legal issue applies to the specific facts in this adversary proceeding. In this case, it is undisputed that whatever processes and procedures were in place, the Oakland County Register of Deeds did not maintain an entry book in compliance with Mich. Comp. Laws Ann. § 565.24, either at the time that the Debtors granted the mortgage to Interstate on April 30, 2003 or at the time that the Oakland County Register of Deeds assigned a liber and page number to the mortgage on July 30, 2003. The Court must therefore determine when Interstate's mortgage was received by the Oakland County Register of Deeds, whether it was in recordable form, and when the recording fee was paid.

It is undisputed that Craig Helmer delivered the mortgage to the register of deeds by dropping it in a "bin" on April 30, 2003. (Def.'s Br., Ex. E, Aff. of Craig Helmer ¶ 4 (docket # 25).) According to the affidavit of Wendy Wilson, the owner and manager of Wilson Title, Wilson Title "did not make any changes to the mortgage or otherwise resubmit the [mortgage] to the Oakland County Register of Deeds." (Docket # 85.) This is corroborated by the affidavit of James VanLeuven, Jr., the Deputy Oakland County Register of Deeds. Mr. VanLeuven stated that "[t]here is no evidence on the document that it was returned by this office to the document drafter or any other party requesting changes, signatures or additional information" and that "[t]here are no documents in this office to indicate that the Mortgage in question was returned by this office to the document drafter or any other party requesting changes, signatures or additional information." (Docket # 86 (emphasis omitted).) Mr. VanLeuven also stated that the Oakland County Register of

Deeds gave the mortgage a liber and page number on July 30, 2003. (Id.) This undisputed evidence establishes that Interstate's mortgage complied with all of the legal requirements of Mich. Comp. Laws Ann. § 565.201 and was in recordable form when it was delivered by Mr. Helmer on April 30, 2003.

It is also undisputed that check No. 3632 from Wilson Title dated June 17, 2003, included the payment for the recording fee for Interstate's mortgage, and was deposited by the Oakland County Register of Deeds on July 30, 2003. (Def.'s Br., Ex. D (docket # 58); Def.'s Br., Ex. F (docket # 25); Pl.'s Br., Ex. D (docket # 54).) Mr. Helmer was the Wilson Title employee who delivered Interstate's mortgage to the Oakland County Register of Deeds. In his deposition testimony, he explained that three different people wrote check No. 3632. (Pl.'s Br. Ex. C (docket # 54).) First, the date, payee and memo line were filled out by a former employee of Wilson Title. (Id. at 10.) Mr. Helmer had no idea why that employee would have dated the check June 17, 2003, or even when she wrote that information on the check. (Id. at 10-11.). Next, Mr. Helmer testified that personnel of the Oakland County Register of Deeds filled in the amount, as they "always" do. (Id. at 8.) The date that the Oakland County Register of Deeds filled in the amount is not part of the record. Finally, Mr. Helmer verified his signature on the check. (Id. at 10.) However, the date that Mr. Helmer signed the check is not part of the record.

The problem in this case is that Mich. Comp. Laws Ann. § 600.2567(1)(a) requires that the recording fee be paid when the mortgage "is left for record." The factual and legal conclusions required to be made based on payment of the recording fee were issues raised in Interstate's second motion for summary judgment and the Trustee's cross motion for summary judgment. In Schmiel II, the Court noted as follows:

-33-

Interstate produced two affidavits attesting that the Register of Deeds will not accept the recording fee until after completing its review of the instrument to be recorded. Although Mich. Comp. Laws Ann. § 600.2567(1)(a) requires that the fee must be paid "when the mortgage is left for record," Interstate argued that the Register of Deeds waived immediate tender due to the high volume of filings. The affidavit provided by the Trustee from the Chief Deputy Register of Deeds did not address the process for tender and acceptance of the recording fee. No other facts or circumstances regarding the payment of the recording fee were presented in the parties' affidavits. The parties did not provide any citation of authority to the Court to enable the Court to rule as a matter of law that the issuance of the check on June 17, 2003 and its tender on July 30, 2003 by themselves must lead to the conclusion that the Interstate mortgage was not received for record until July 30, 2003. The June 17, 2003 date may be significant in deciding when Interstate's mortgage was recorded, but the Court is unable to make that determination without further information as to what specifically happened in this case with regard to the recording fee and what the Register of Deeds requires for the payment of fees generally.

(Schmiel II at 12, n.2 (docket # 77).) The Court is still without sufficient evidence to make that determination.

Although the Court finds that the Interstate mortgage was received by the Oakland County Register of Deeds on April 30, 2003, and that it was in recordable form when received, the Court cannot make a finding on the record before it as to when the fee was paid. There are genuine issues of material fact regarding the payment of the fee in this case. Therefore, the case must proceed to trial with respect to the third requirement for recording under Michigan law: payment of the statutory recording fee. Accordingly, the Court will issue an amended scheduling order setting a final pre-trial conference and trial date.

**For publication**

Signed on February 27, 2007

                                           /s/ Phillip J. Shefferly
                                       Phillip J. Shefferly
                                       United States Bankruptcy Judge